REESE et ux. v. MURDOCK et ux.

No. 7656.  Decided May 5, 1952.  (243 P. 2d 948.)

See 11 C. J. S. Boundaries, sec. 116. Fence as factor in establishing boundary. 8 Am. Jur., Boundaries, sec. 82; 170 A. L. R. 1144.

*Dwight L. King,* Salt Lake City, for appellants.

*Leonard S. Ralph, William S. Livingston,* Salt Lake City, for respondents.

WADE, Justice.

This is a boundary line contest between the purchasers of two adjoining tracts of land from the same grantors. Under the descriptions in the conveyances to each side of this controversy, the west and north boundary line of plaintiffs' tract coincide with an east and south boundary line of defendants' tract. The east boundary line of both of these tracts, where defendants' land extends to the north of plaintiffs' is the north and south quarter section line. There is an old fence on the east side of the two tracts which according to all the surveys introduced in evidence is either about 12 feet or 30 feet east of the north and south quarter section line. Plaintiffs claim that their west boundary line is 132 feet west from this north and south section line as established by one or the other of these surveys, but defendants contend that since the old monuments marking this quarter section line cannot be now located and since the owners of this tract from the earliest times have claimed to own and held possession of the land to this old fence under deeds describing the east boundary line as being on the quarter section line, this shows that this old fence was placed on that quarter section line according to the early surveys. For the reader's convenience, the following

map of the property in question is inserted for illustrative purposes only, as it is not drawn to exact scale.

Prior to March 6, 1946, a Mr. and Mrs. White and their son owned the land in question which is situated on the north side of 56th South Street at about 999 East in Salt Lake County and consists of several acres. On that day they conveyed by warranty deed to plaintiffs, Mr. and Mrs. Reese, the appellants in this case, an acre from the southeast corner of their larger tract. Plaintiffs' tract is 132 feet or 8 rods from east to west and borders on the north side of the street, and is 330 feet or 20 rods to the north. The south two rods of the property described in plaintiffs' first deed was covered by the street and to correct that

so that they would have a full acre not including the part in the street, on January 31, 1947 the Whites conveyed and warranted an additional two rods to the north. In giving possession under the original deed, Mr. White and Mr. Reese, without a survey, measured 132 feet west from the old fence line on the east where it intersects with the property line on the north side of the street, and placed a post, and then located a point 20 rods to the north and 132 feet west from the old fence line where they placed another post to mark the west boundary of the property conveyed.

On February 13, 1947, the Whites contracted to sell the rest of their tract to defendants, Mr. and Mrs. Murdock. Before entering into such contract, the defendants had two independent surveys made of the property, each of which fixed the quarter corner of the section, which is the southeast corner of plaintiffs' tract, about 12 feet west of the south end of the old fence line, whereupon plaintiffs claimed an additional 12 feet to the west. Defendants were not satisfied with these surveys and at their request the County Surveyor resurveyed and reestablished the monument at the southeast corner of the northeast quarter of the section, the beginning point of plaintiffs' property, at a point 30 feet west of the old fence line and again plaintiffs claimed an additional 18-foot strip of land to the west, which defendants resisted. Prior thereto the Whites conveyed to defendants by warranty deed dated July ——, 1947, the tract covered by their contract. After the dispute arose, both plaintiffs and defendants demanded that the Whites quitclaim to them the additional disputed property, and on December 5, 1949 the Whites quitclaimed to defendants this property describing all of the two tracts both by metes and bounds and by monuments, but excepting therefrom the property which they had previously conveyed to plaintiffs.

The beginning point in the description in plaintiffs' deeds is

"at the southeast corner of the northeast quarter of the northwest quarter of section 17, as re-established"

but the term "re-established" does not appear either in the description in the defendants' contract or their warranty deed to this property, but only in the later quitclaim deed where it excepts from the conveyance the property previously conveyed to plaintiffs. However, that term was used in most all of the deeds of transfer in the chain of title to this property, appearing first in a deed dated January 22, 1875. There is no evidence whatever in the record, except the use of this term, of there being such a re-establishment of that point. Of course the use of that term could not refer to the re-establishment by the County Surveyor after this dispute had arisen.

The trial court found that in all of both plaintiffs' and defendants' deeds and the deeds in their chain of title to this property, where the terms

"the southeast corner of the northeast quarter of the northwest quarter of section 17",

whether the word re-established is used or not, it was understood and intended by the parties to such deed to refer to and mean a point on the center of 56th Street directly south of the end of the old fence line. The evidence of where that point was according to the original survey establishing that point or as re-establishing it is very uncertain. There is evidence that this fence line has marked the eastern boundary of this property which has been held without dispute by the predecessors of plaintiffs and defendants for more than fifty years, that the land of the property owner on the east does not even come as far west as that fence but that such owner and his predecessors have during the last fifty years occupied the property up to that fence. There is no evidence of any other monuments on the east marking this point or the east boundary line of this property. This fence line runs clear through to the north boundary line of this section. From the starting point the fence line runs slightly to the west as it goes north until it reaches the north side of the White tract, and at that point it bends·

to the east a few degrees of due north, so that it is not a straight line nor does it run directly north and south. In view of the uncertainty of the location of this point and line, the findings of the court should be construed as a finding that according to the original and re-establishing surveys, this starting point, that is the quarter quarter corner, is in line with the old fence extended to the center of the street.

Plaintiffs contend that such a finding is not supported by the evidence and the court must adopt one of the surveys. We conclude that such a finding is supported by the evidence. There are no monuments on the ground which indicate where this starting point was located either by the original or the re-establishing survey except this old fence. In the conveying of this property in the chain of title, the eastern boundary line is described as running slightly east of due north, but the old fence actually runs slightly west of due north, and at the north boundary line of the White tract there is a bend in the fence toward the east so that from there to the north boundary of the section the fence line runs slightly to the east of due north. The evidence is clear and without conflict that the Whites and their predecessors have occupied this land to this fence on the east as far back as anyone can remember and in excess of fifty years and claimed the land to that fence. The two surveys which located the starting point 12 feet west of the south end of this fence line arrived at that conclusion by tying into a monument in the center of the intersection of 56th South Street and 9th East Street, and following the courses in defendants' and their predecessors' deeds to a fence on the north boundary line of defendants' tract and along that fence to a point where it intersects with a fence running north and south. They found that this intersection of these two fences according to the description of these deeds was within a few inches of the intersection of such fences now on the ground, but the old fence line which is on the east side of the White tract runs slightly east of due

south whereas the description in the deed has it run slightly west of due south and this accounts for the 12-foot difference in the starting point. One of these surveyors testified that it was a common error for the description in a deed to have one of the courses veer slightly in the wrong direction and that old fence lines tend to indicate the true boundary line in accordance with the early surveys. The County Surveyor in re-establishing this quarter quarter monument relied on field notes of old surveys that were available and by calculations arrived at the point.

The official federal survey only establishes section corners by monuments and most of such monuments cannot be now located. Where an original monument is located, it takes preference over bounds and courses from field notes. Here we have a fence line which has served as the east boundary line of this property for many years and as far as is known has always been so recognized. It does not coincide with the field notes of some early surveys of this property, and from the north end it veers in the wrong direction as it goes toward the south. All of the parties concerned in purchasing this property understood that this fence line was the eastern boundary line of the property. This is true even though defendants knew at that time that there was doubt on that question. There seems to be no possibility that anyone will ever dispute the right of plaintiffs to the property to that fence line, and should such dispute arise he may rely on his warranty deed and look to the Whites to make it good. Where this quarter quarter corner was under the original survey and as re-established cannot be demonstrated and under the evidence is very uncertain, but the situation demands that it be made certain by this decision, as between these parties. The existence of this fence line under these facts and circumstances is sufficient to sustain the finding of the trial court's decision.

We call attention to the fact that our problem here is to determine where this quarter quarter corner was established or re-established under the original surveys. We are

not concerned with a boundary line by acquiescence, for this fence line does not form the boundary line between the parties to this action. Nor is this a case to correct descriptions of a deed placed therein by mistake and cannot be made such because the grantors in these deeds are not parties to the action.

Judgment affirmed. Costs to respondents.

WOLFE, C. J., and McDONOUGH, CROCKETT and HENRIOD, JJ., concur.