12 Utah 2d 136 (1961)
363 P.2d 1116
UNITED STEELWORKERS OF AMERICA, LOCAL NO. 5486, FOR AND ON BEHALF OF ITS MEMBERS EMPLOYED BY UTAH COPPER DIVISION, KENNECOTT COPPER CORPORATION, 60-BR-230 ET AL., PLAINTIFFS,
v.
BOARD OF REVIEW OF THE INDUSTRIAL COMMISSION OF UTAH, DEPARTMENT OF EMPLOYMENT SECURITY, AND THE UTAH COPPER DIVISION OF KENNECOTT COPPER CORPORATION, DEFENDANTS.
No. 9322.
Supreme Court of Utah.
August 14, 1961.
Draper, Sandack & Draper, Salt Lake City, for plaintiffs.
Walter L. Budge, Atty. Gen., Fred F. Dremann, Parsons, Behle, Evans & Moffat, Salt Lake City, for defendants.
CALLISTER, Justice.
This is an appeal from a decision of the Board of Review of the Utah Industrial Commission affirming the ruling of its Appeals Referee denying the involved claimants eligibility for unemployment benefits. The case on review consolidates five class and one individual decision. Pursuant to stipulation of the parties, one joint petition was filed.
The circumstance giving rise to these claims was a strike at the Utah Copper Division of Kennecott Copper Corporation. Nineteen local labor unions had separate working agreements or contracts with Kennecott which, by their terms, expired on either June 30, 1959 or July 31, 1959. In April of 1959, all of these unions commenced negotiations with the company for new working agreements. All of the unions presented certain common bargaining demands in the field of health and welfare benefits through a "Unity Council," but other terms and conditions of employment were negotiated separately by each union with the management of the company. By August 1 no agreement had been reached with any of the unions and the former agreements were extended on a day-to-day basis. On August 10 all of the respective local unions simultaneously effected a strike and all operations at the Utah Copper Division of Kennecott ceased. Substantial operations did not again commence until February 6, 1960.
Contract settlement with the various unions was effectuated at various times. On November 21, 1959 the five locals of the United Steel Workers arrived at an agreement with the company. Thereafter, at different times, agreement was reached with other unions, the last being with the Brotherhood of Locomotive Firemen and Enginemen, Lodge 844, on January 27, 1960. These events give rise to the question of whether an employee is entitled to any unemployment benefits for the period of time between the date his local union settled with the company and the commencement of operations on February 6, 1960.
This last question is further complicated by the fact that some employees were called back to their jobs after their respective locals had reached an agreement but, after short periods of work, were let off because of picketing on behalf of a union which had not yet reached an agreement, deterioration of plant and equipment by reason of idleness which needed repairing, and lack of material to be processed.
Section 35-4-5(d) of the Utah Employment Security Act provides:
"5. An individual shall be ineligible for benefits or for purposes of establishing a waiting period: * * *
"(d) For any week in which it is found by the commission that his unemployment is due to a stoppage of work which exists because of a strike involving his grade, class, or group of workers at the factory or establishment at which he is or was last employed.
"(1) If the commission, upon investigation, shall find that a strike has been fomented by a worker of any employer, none of the workers of the grade, class, or group of workers of the individual who is found to be a party of such plan or agreement to foment a strike, shall be eligible for benefits; provided, however, that if the commission, upon investigation, shall find that such strike is caused by the failure or refusal of any employer to conform to the provisions of any law of the State of Utah or the United States pertaining to hours, wages, or other conditions of work, such strike shall not render the workers ineligible for benefits.
"(2) If the commission upon investigation, shall find that the employer, his agent, or representative, has conspired, planned or agreed with any of his workers, their agents, or representatives, to foment a strike, such strike shall not render the workers ineligible for benefits." (Italics ours.)
The appellant unions place great reliance upon, and devote most of their argument, to the proposition that the Utah Copper Division of Kennecott is not an "establishment" within the meaning of the Act. It is their position that if the Utah Copper Division is not a "single establishment," then the exclusion provided for in Section 35-4-5(d) does not apply after the date that each local ended its strike and ratified a strike settlement agreement.
The Industrial Commission takes the position that whether or not the company is a "single establishment" within the meaning of the Act is of secondary importance except as to the effect such interpretation has on the matter of resumption of normal or substantial operations. The Commission contends that of prime importance is the question whether claimants who participated in a simultaneous strike with members of other unions escape from the disqualification of the Act by reason of the fact that their union has reached a contract settlement prior to the time when all unions involved in the strike have reached settlements which will permit the resumption of normal operations.
The production operations of the Utah Copper Division is administered from a central office in Salt Lake City, under the direction of a general manager. Directly under the general manager there is a superintendent of mines, superintendent of mills, refinery supervisor, smelter supervisor, and a superintendent of the auxiliary units including the power station, precipitation plant and ore haulage system. The Utah Copper Division consists of an open-pit mine separated only by a few miles from two mills, a refinery, precipitation plant, and a central power station, with general haulage system between all segments of the operations. It maintains a central accounting office in Salt Lake City, and all of the various plant operation records, payroll records and pay checks for all employees are made up in this office. The purchasing, industrial and union relations, employment and employee training, engineering, quality control, safety, security, and production schedules all emanate from the Salt Lake City Office.
With ample justification, the Appeals Referee found that the operations of all segments of the Utah Copper Division are so integrated as to make the continuous flow of production dependent upon each other. A stoppage of the flow of ore from the mine to the mills or a stoppage in the ore haulage operation would immediately shut down the entire operation.
We agree with the position of the Commission that the question of whether or not the Utah Copper Division operations constitute one "establishment" is academic in view of the fact that all claimants herein were directly involved and participated in the strike of August 10. This strike resulted in a work stoppage at all segments of the operations. Furthermore, it was apparent, because of the integrated nature of the operations, that resumption of normal operations could not be effectuated until all of the striking unions reached a settlement with the company.
Claimants make no showing that the continuation of the work stoppage was due to anything other than the simultaneous strikes. The Appeals Referee so found, and he further found, and the record supports him, that the company did not have the duty or the opportunity to resume operations on a normal or substantial basis until February 6, 1960.
The fact that bargaining was carried on subsequent to the strike and various local unions settled their differences with the company does not remove the joint responsibility for the work stoppage which existed until February 6, 1960. It was the intent of the legislature to deny unemployment compensation to members of striking units.[1]
We hold that where members of a local union participate with other unions in a mutual and simultaneous strike against their mutual employer, the effect of which is to cause a complete stoppage of work, such members should be disqualified from receiving unemployment benefits during the period or periods when the employer is unable to resume operations because the members of one or more of such other striking unions remain on strike.
Affirmed. No costs awarded.
WADE, C.J., and HENRIOD, McDONOUGH and CROCKETT, JJ., concur.
NOTES
[1] See Olof Nelson Const. Co. v. Industrial Commission, 121 Utah 523, 243 P.2d 951.